734 F.2d 1221
 Roger P. GONZALEZ, Sr., Individually and as Administrator of
the Estate of Jennie Gonzalez and Judith Gonzalez,
Plaintiffs-Appellees,
v.
VOLVO OF AMERICA CORPORATION, Defendant-Appellant,
and
U-Haul Company of Central Indiana, Inc., d/b/a U-Haul Moving
Center, Defendant.
 No. 82-2786.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 26, 1983.
Decided May 16, 1984.
 
 1
 William M. Osborn, Thomas Todd Reynolds, Osborn & Hiner, Indianapolis, Ind., Francis D. Morrissey, Thomas F. Tobin, William Lynch Schaller, Baker & Mc Kenzie, Chicago, Ill., for defendant-appellant.
 
 
 2
 Mark C. Ladendorf, Yosha & Cline, Indianapolis, Ind., for plaintiffs-appellees.
 
 
 3
 Before PELL and CUDAHY, Circuit Judges, and WILKINS, Senior District Judge.*
 
 
 4
 WILKINS, Senior District Judge.
 
 
 5
 This product liability action arises out of an automobile accident which occurred on September 2, 1977, in the State of Arkansas. Plaintiff-appellee Judith Gonzalez, then a minor, was driving a 1974 Volvo automobile. Judith's parents and a younger brother were passengers. The vehicle was towing a trailer and hitch rented from defendant U-Haul Company of Central Indiana, Inc. [hereinafter U-Haul], when it left the road and rolled over. Both Judith and her mother Jennie were thrown from the car and injured; Jennie died from her injuries.
 
 
 6
 On March 3, 1978, plaintiff-appellee Roger Gonzalez, Sr., filed a personal injury wrongful death suit on behalf of daughter Judith and wife Jennie respectively in the United States District Court for the Western District of Arkansas. Jurisdiction was based on diversity of citizenship. 28 U.S.C. Sec. 1332. The original complaint named only U-Haul as defendant, and the complaint was amended on September 5, 1978 to name appellant Volvo of America Corporation [hereinafter Volvo] as an additional defendant. On September 4, 1979, the complaint was dismissed as to U-Haul for lack of personal jurisdiction, and Roger thereupon on November 5, 1979 filed an action against U-Haul in the United States District Court for the Southern District of Indiana. Jurisdiction over the Indiana action was also based on diversity of citizenship.
 
 
 7
 On October 2, 1980, Roger successfully moved to transfer the Arkansas action to the Southern District of Indiana pursuant to 28 U.S.C. Sec. 1404(a). In November, 1980, the two actions were consolidated for trial, and Roger was appointed for the first time as the personal representative of his deceased wife Jennie. On December 17, 1981, a fifth amended complaint was permitted to be filed naming both U-Haul and Volvo as defendants. In the amended complaint, Judith, having reached majority, sued on her own behalf for her personal injuries, and Roger sued as administrator of Jennie's estate on the wrongful death claim.
 
 
 8
 A jury trial was held in August, 1982. The jury returned a verdict in favor of the plaintiffs and against each defendant for $250,000 on the wrongful death claim brought by Roger as administrator of Jennie's estate, and for $216,000 on the personal injury claim of Judith. The district court entered judgment accordingly, and defendant Volvo appealed.
 
 
 9
 When jurisdiction is based on diversity of citizenship, a federal court must apply the substantive law of the forum state under the Erie doctrine, including the state's choice of law rules. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Goldberg v. Medtronic, Inc., 686 F.2d 1219, 1225 (7th Cir.1982). However, when a defendant successfully moves to transfer a diversity action from one district court to another on the grounds of convenience and justice pursuant to 28 U.S.C. Sec. 1404(a), the transferee court must apply the state law of the original forum. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The rule announced in Van Dusen is designed to "ensure that the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed." Id. at 638, 84 S.Ct. at 820. See also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Although the Supreme Court did not specifically decide whether the same rule applies to transfers initiated by a plaintiff, see Van Dusen, supra, 376 U.S. at 639-40, 84 S.Ct. at 820-21, a few lower federal courts have reached this issue.
 
 
 10
 In the Sixth and Eleventh Circuits, the Van Dusen rule is applied to transfers initiated by the plaintiff unless the transferor court would not have been able to exercise personal jurisdiction over the defendant, Martin v. Stokes, 623 F.2d 469, 471 (6th Cir.1980); Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, 689 F.2d 982, 991-93 (11th Cir.1982), and the same rule has been approved by at least one district court in this circuit. Subacz v. Town Tower Motel Corp., 567 F.Supp. 1308 (N.D.Ind.1983). If personal jurisdiction over the defendant was lacking in the original forum, the transferee court must apply the law of the state in which it sits, regardless of which party requested the transfer. Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1110 (5th Cir.1981); Martin v. Stokes, supra, 623 F.2d at 472; Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, supra, 689 F.2d at 992; Subacz v. Town Tower Motel Corp., supra, 567 F.Supp. at 1316. Thus plaintiffs are not permitted to capture favorable law of forums which lack personal jurisdiction over the defendant by filing suit there and then transferring the action to a state that is able to assert personal jurisdiction. However, when a plaintiff has exercised his choice of forum in the first instance by selecting a permissible forum, the state law of that forum should govern the action regardless of which party initiates a transfer. Martin v. Stokes, supra, 623 F.2d at 473. Because we agree that such an approach to plaintiff-initiated transfers under 28 U.S.C. Sec. 1404(a) complements the policy underlying the Van Dusen rule, we adopt that approach here.
 
 
 11
 In the present case, appellant Volvo was first made a party in the Arkansas district court action on September 5, 1978. On September 4, 1979, the Arkansas federal court held that it had personal jurisdiction over Volvo, and on October 2, 1980 that court transferred the action to the Southern District of Indiana pursuant to plaintiffs' motion under 28 U.S.C. Sec. 1404(a). Under these facts, the district court in Indiana should have applied the state law of the original forum, i.e., Arkansas. Because the interstate nature of this action implicates the laws of several jurisdictions, Arkansas choice of law rules also should have been applied. Kalmich v. Bruno, 553 F.2d 549, 552 (7th Cir.1977), cert. denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977).
 
 
 12
 In tort actions involving parties from different states, Arkansas choice of law rules dictate that the substantive law of the state having the "most significant relationship" to the lawsuit be applied. Williams v. Carr, 263 Ark. 326, 565 S.W.2d 400, 404 (1978) (In Banc). In making this determination, the Arkansas rule requires consideration of several factors, including advancement of the forum state's governmental interests and application of the better rule of law. Id.; See also Williams v. American Broadcasting Companies, Inc., 96 F.R.D. 658, 662 (W.D.Ark.1983). Application of the Arkansas choice of law rule may even result in the laws of different states being applied to separate issues in the same lawsuit. See, e.g., Wallis v. Mrs. Smith's Pie Co., 261 Ark. 622, 550 S.W.2d 453 (1977); Williams v. Carr, supra, 565 S.W.2d at 404.
 
 
 13
 Although the choice of law issue was raised directly or indirectly on at least two separate occasions before the Indiana district court, on neither occasion was the choice clearly made. In diversity cases where state substantive law supplies the rules of decision, the importance of making that choice cannot be underestimated. In the present action, for example, one of appellant's assignments of error pertains to the wrongful death claim regarding Jennie Gonzalez. If Indiana substantive law is applicable, decisions by the courts of that state indicate that a wrongful death cause of action for decedent Jennie Gonzalez no longer existed at the time plaintiff Roger Gonzalez was appointed as the personal representative of his wife's estate. Warrick Hospital, Inc. v. Wallace, 435 N.E.2d 263 (Ind.App.1982); General Motors Corp. v. Arnett, 418 N.E.2d 546 (Ind.App.1981). The same conclusion appears likely under the Arkansas wrongful death statute, but the language of the decisions by courts in that state is less clear. See, e.g., Sandusky v. First Electric Cooperative, 266 Ark. 588, 587 S.W.2d 37 (1979). As if to amplify the necessity for the district court to have made a clear choice of law, plaintiffs-appellees now argue, apparently for the first time on appeal, that the California wrongful death statute should govern.
 
 
 14
 A number of other issues were raised on appeal by appellant Volvo, particularly with regard to product liability on the part of Volvo. Until a proper choice of law is made, however, these and other issues of substantive law cannot be resolved. We express no opinion on their proper resolution at this time. Because we have determined that a new trial in this action is necessitated in any event, we will remand the matter to the district court for application of the Arkansas choice of law rules in the first instance.
 
 
 15
 Volvo has also argued on appeal that a new trial is required because of the misconduct of plaintiffs' counsel during closing argument. Volvo acknowledges, however, that it made no contemporaneous objections to plaintiffs' argument before the trial court. It is well-settled that objections not raised at trial ordinarily may not be raised upon appeal. Pietrucha v. Grant Hospital, 447 F.2d 1029, 1039 (7th Cir.1971) (Pell, J., dissenting); Rothschild v. Drake Hotel, Inc., 397 F.2d 419, 425 (7th Cir.1968). The purpose of this rule is to inform the trial judge of possible errors so that he may have an opportunity to correct them. Ries v. Lynskey, 452 F.2d 172, 179 (7th Cir.1971). In the absence of a contemporaneous objection, reviewing courts will reverse only in extraordinary situations, in order to correct plain prejudicial error or to prevent a plain miscarriage of justice. Sadowski v. Bombardier Ltd., 539 F.2d 615, 618 (7th Cir.1976); Lange v. Schultz, 627 F.2d 122, 127 (8th Cir.1980).
 
 
 16
 The trial judge does not sit as a passive observer who functions solely when called upon by the parties, but is required instead to assure that each litigant is accorded a fair trial. Pingatore v. Montgomery Ward & Co., 419 F.2d 1138, 1143 (6th Cir.1969), cert. denied, 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970), quoting Brown v. Walter, 62 F.2d 798, 799-800 (2d Cir.1933). When examining allegations of misconduct during closing arguments, appellate courts have recognized that frequent objections by counsel serve to emphasize the prejudicial statements made by opposing counsel and risk antagonizing the jury. Werner v. Upjohn Co., Inc., 628 F.2d 848, 854 (4th Cir.1980). Thus when a party's right to a fair trial has been substantially prejudiced by the actions of opposing counsel so as to result in plain or fundamental error if uncorrected, the appellate court may order a new trial in spite of the absence of a contemporaneous objection below. Id.; Edwards v. Sears, Roebuck and Co., 512 F.2d 276 (5th Cir.1975); Klotz v. Sears, Roebuck & Co., 267 F.2d 53 (7th Cir.1959), cert. denied, 361 U.S. 877, 80 S.Ct. 141, 4 L.Ed.2d 114 (1959).
 
 
 17
 From our review of the record below, it is manifest that the closing argument of plaintiffs' counsel, Mr. Ladendorf and Mr. Cline, far exceeded the permissible bounds of vigorous advocacy. Counsel made repeated references to defendants' corporate status, size, and wealth. For example, in describing the history of the theory of products liability to the jury, plaintiffs' counsel Mr. Ladendorf remarked that "The law would not allow a corporate giant to prey on innocent consumers, and that is why this law came about." Counsel referred to the defendants as corporate giants again later when talking about defendants' witnesses:
 
 
 18
 It is the same old story: you can't beat city hall. And that is what they are trying to do here today. We have the corporate giant against the innocent consumers. That's what this lawsuit is all about. You did not hear throughout the course of this trial any cross-examination by this defendant against his witnesses, or by this defendant against his witnesses. How come? Corporate giants--they probably want to keep together.
 
 
 19
 Another reference to the defendants' wealth later in Mr. Ladendorf's argument describes U-Haul as follows:
 
 
 20
 And remember, this is a giant in the field that they're in. There is no larger company in the United States or the world. They buy more hitches and they have got more clout, more money than any other person or company that's in this field.
 
 
 21
 Appealing to the sympathy of the jurors through references to the wealth of the defendants in contrast to the relative poverty of the plaintiffs is totally improper and cause for reversal. Draper v. Airco, Inc., 580 F.2d 91 (3d Cir.1978); Edwards v. Sears, Roebuck & Co., supra, 512 F.2d at 276; Koufakis v. Carvel, 425 F.2d 892 (2d Cir.1970).
 
 
 22
 Statements were also made by plaintiffs' counsel improperly suggesting criminality on the part of defendants' corporate officers. When describing Judith Gonzalez's injuries, Mr. Ladendorf made the following questionable analogy:
 
 
 23
 In fact, what she is, is trapped within a prison within her own body for three months. Three months in prison in one's body. And I ask you, what is that worth alone? I ask you what U-Haul's Chairman of the Board would [pay to] stay out of Pendleton [location of the Indiana State Reformatory] three months if he was sentenced there? I ask you what Volvo's director of safety would pay to stay out of Michigan City [location of the Indiana State Prison] for three months? I bet you'd see some pretty big bills on the table if that came down.
 
 
 24
 Plaintiffs' counsel further injected his own opinion as to the honesty and truthfulness of witnesses on several occasions. For example, when discussing the testimony of defense witness Steve Young, counsel remarked that "Mr. Mattingly [counsel for U-Haul] led him through his testimony, and I imagine if Mr. Mattingly would have said, 'Mr. Young, will you do a soft shoe dance for us here in front of the jury,' he would have attempted to do so until the Bailiff put the gavel down." Counsel then went on to characterize all of defendants' witnesses as having a financial interest in the lawsuit in the following language:
 
 
 25
 But stop and realize for a second: What do all these defendants' witnesses have in common? They all have a pecuniary interest in the outcome of this lawsuit--every one of them. There are no independent witnesses that they have put on the stand.
 
 
 26
 Mr. Ladendorf additionally suggested to the jurors that their verdict could be based on considerations not properly before them as follows:
 
 
 27
 You will have a chance to do something about this all. You ladies and gentlemen, as jurors, are the representatives of our community. You, by your verdict today in this court, will be able to set safety standards that you want applicable for our country. You will be able to tell both these defendants, 'We will not tolerate you putting a defective product out on the market which will cause the death of a loved one and break the back of another--because we don't want it to happen to our loved ones.'
 
 
 28
 While disclaiming that plaintiffs were asking for sympathy from the jurors, Mr. Cline referred to matters outside the record in his argument which could have no other purpose than to arouse sympathy for the plaintiffs in the minds of the jurors:
 
 
 29
 If we were here from sympathy, we wouldn't be here. These people have had all the sympathy they needed from the thousands of people who attended Mrs. Gonzalez's funeral and the people who paid visits to Judy while she was here in the hospital and home in a cast. We are not here for sympathy; we are here for payment.
 
 
 30
 These quotes from the trial transcript are illustrative of the inflammatory and prejudicial nature of the closing arguments by plaintiffs' counsel. New trials have been required in cases with less extreme examples of misconduct during closing arguments. See, e.g., Draper v. Airco, Inc., supra, 580 F.2d at 91; Koufakis v. Carvel, supra, 425 F.2d at 892; Klotz v. Sears, Roebuck & Co., supra, 267 F.2d at 53. Although each remark individually may not have created inherent unfairness to the appellant, we conclude that the closing argument of plaintiffs' counsel, taken as a whole, was extremely prejudicial and resulted in plain and fundamental error. Accordingly, a new trial is required in this case.
 
 
 31
 In view of the foregoing, the judgment entered by the district court is reversed and the matter is hereby remanded for a new trial in accordance with this opinion.
 
 
 32
 CUDAHY, Circuit Judge, dissenting.
 
 
 33
 In my view, neither of the majority's arguments provides an adequate basis for reversing this judgment. Volvo has waived any objections it may have had to the district court's choice of law and to the comments of plaintiffs' counsel during their closing arguments.
 
 Choice of Law
 
 34
 The majority's general discussion of choice of law in diversity cases involving transfers among districts is accurate, but the district court's application of Indiana substantive law in this case is not an adequate basis for overturning this verdict. Throughout this lengthy litigation, Volvo has insisted that Indiana law applies to the controversy, and the district court did exactly what Volvo asked it to do in this respect. Even in this court Volvo has never argued that the district court erred by applying Indiana law. Surely Volvo's counsel realized, as the majority apparently has not, that Volvo simply cannot object at this stage of the proceedings to the application of Indiana products liability and damages law.
 
 
 35
 The majority says the choice of law issue in the case was raised "directly or indirectly" at least twice below, and the majority faults the district court for never making a clear choice under Arkansas choice of law rules. It is true that the record on appeal does not contain a statement by the district court about the choice of law, but this is not conclusive because the record does not contain transcripts of any pretrial hearings. This gap in the appellate record can surely not be the basis for reversing the judgment; after all, the appellant has the duty to bring up a record adequate for review. Therefore, the majority appears to hold that it was error for the district court to apply Indiana substantive law. Determining whether the district court erred and whether Volvo waived the point requires a more detailed consideration of the procedural history of this case.
 
 
 36
 As the majority notes, the plaintiffs originally filed their claims in the district court in Arkansas against defendants Volvo and U-Haul of Central Indiana, and the case was then transferred on plaintiffs' motion to the Southern District of Indiana. Arkansas choice of law rules would not have applied to defendant U-Haul because the reason for the transfer was that plaintiffs could not get personal jurisdiction over U-Haul in Arkansas. See 28 U.S.C. Sec. 1406(a) (transfer when plaintiff files in wrong district). Under these circumstances, plaintiffs may not gain an advantage over the defendant by first choosing a forum which does not have jurisdiction over the defendant and then insisting that the transferee court apply the transferring court's law. Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, 689 F.2d 982, 991-93 (11th Cir.1982); Martin v. Stokes, 623 F.2d 469, 472 (6th Cir.1980). Cf. Van Dusen v. Barrack, 376 U.S. 612, 639-40 & n. 42, 84 S.Ct. 805, 820-21, 11 L.Ed.2d 945 (1964) (declining to decide whether holding applies where plaintiffs seek transfer after suing in wrong district). With respect to defendant Volvo, the nature of the transfer is not entirely clear. There was personal jurisdiction over Volvo in both Arkansas and Indiana, but it is perhaps arguable that the reasons for the transfer can be applied for the benefit of defendant Volvo so that the rule requiring application of the law of the transferring jurisdiction (the Van Dusen rule) would not apply to Volvo either.[1] On the other hand, if the reasons for transfer of U-Haul could not be applied for the benefit of Volvo, then the Van Dusen rule would require application of Arkansas choice of law rules to Volvo. This was the approach taken by the district and circuit courts in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 245 n. 10, 102 S.Ct. 252, 260, 70 L.Ed.2d 419 (1981).
 
 
 37
 For purposes of argument, I shall assume that the district court should have applied Arkansas choice of law rules to Volvo and Indiana choice of law rules to U-Haul. It is clear that the district court's application of Indiana products liability law to Volvo could only have been error if Arkansas choice of law rules would have dictated that Arkansas law apply. Yet the majority does not resolve that question, relying instead on the district court's failure (on our incomplete record) to consider Arkansas choice of law rules. It is wholly possible that Arkansas choice of law rules would apply Indiana law to Volvo. In that case, the district court was entirely correct.
 
 
 38
 However, even if we suppose that Arkansas choice of law rules would have applied Arkansas law to Volvo, it is egregiously unfair to reverse this judgment now on this basis. Before trial in the district court, the major legal dispute concerned two highly technical procedural matters which had choice of law dimensions. Judith Gonzalez had been a minor when the accident occurred and when the suit was filed, and she reached her majority while the suit was pending. The plaintiffs filed an amended complaint substituting her as plaintiff for her father who had originally brought her claims as her next friend. Volvo argued in the district court that Judith's claims should be dismissed because 1) the substitution came too late under Indiana law, and 2) timely substitution under Indiana law was a "substantive" condition precedent to bringing such a claim. Volvo contended that because Indiana courts labeled the requirement "substantive," the federal courts could not apply Fed.R.Civ.P. 15(c) and 17(a) (relating back such substitutions to the date of original pleading) without violating the Erie doctrine. For our purposes, the central point is that Volvo was insisting on the application of Indiana law. The plaintiffs responded, and the district court agreed, that, regardless of the label Indiana courts put on the substitution issue, the problem of relating back and substitution was a procedural problem clearly covered by Fed.R.Civ.P. 15(c) and 17(a). See Hanna v. Plumer, 380 U.S. 460 (1965).[2] While the papers filed in the district court include some discussion of whether Indiana or Arkansas law of substitution should apply, the major question was whether state or federal law governed the question. Of course, Volvo was insisting all along that Indiana law applied, and because the federal court applied federal law, there was no need to choose which state law applied.
 
 
 39
 The other procedural problem was closely related. Roger Gonzalez was not appointed personal representative of his wife's estate until November 1980, more than three years after the accident. Volvo also sought dismissal of the wrongful death claim because the appointment of Roger as personal representative came too late under Indiana "substantive" law. The plaintiffs took the parallel position that Rules 15(c) and 17(a) governed the matter, and the district court agreed. Again, Volvo has insisted all along that Indiana law should apply.
 
 
 40
 Only one other pretrial dispute involved a choice of law dimension. Plaintiffs originally brought a breach of warranty claim against Volvo. Volvo sought summary judgment on the claim based on lack of privity under Indiana law. Plaintiffs argued that Arkansas law (which apparently does not require privity) applied to the claim. The record before us does not indicate how or when the dispute was resolved, but plaintiffs expressly abandoned their breach of warranty claim before trial. Therefore, there was no need to resolve that choice of law issue, but again, Volvo insisted that Indiana law should apply.
 
 
 41
 My examination of the record shows no other disputes over the choice of law in the case. The district court applied federal procedural law and the Indiana law of products liability and damages to both defendants. In doing so, apart from the two procedural matters discussed above, Volvo got exactly what it had wanted all alongapplication of substantive Indiana law. Throughout the lengthy pretrial proceedings, in the trial brief, in the post-trial motions, and before this court, Volvo has argued and cited Indiana law. The district court applied Indiana law, and, under these circumstances, it is manifestly unfair and inappropriate for this court to reverse the judgment on the choice of law issue.
 
 Closing Argument
 
 42
 The majority also reverses the judgment below based on comments made by plaintiffs' counsel during closing arguments. However, in the absence of any objection below, those comments are not sufficient grounds for reversal in a civil trial such as this.
 
 
 43
 The majority acknowledges that the defendants did not make contemporaneous objections to the relevant comments, but the problem is more severe than that. The record reveals no response of any kind until after the verdict. Defendants did not object to the statements during the plaintiffs' arguments; they did not object after the arguments. They did not ask Judge Dillin to admonish plaintiffs' counsel in the presence of the jury. Nor did they request any stronger instructions to counter the impact of any improper statements. The defendants objected to the comments for the first time in post-verdict motions when it was too late to take remedial measures of any kind.
 
 
 44
 Under these circumstances, reversal based on improper argument is justified only in extreme circumstances. The Supreme Court has said when faced with a similar problem that "counsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial." United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238-39, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940). The reasons for the rule are obvious. The trial court should have the opportunity to rectify errors while it is possible to do so without ordering a new trial. Otherwise, counsel may refrain from objecting, speculate on the jury verdict, and seek to have an adverse judgment set aside on appeal. Deviation from this rule is justified only in exceptional circumstances involving fundamental error and a plain miscarriage of justice. See Rothschild v. Drake Hotel, Inc., 397 F.2d 419, 423 (7th Cir.1968); Christian v. Hertz Corp., 313 F.2d 174, 175 (7th Cir.1963). See also Pietrucha v. Grant Hospital, 447 F.2d 1029, 1039 (7th Cir.1971) (Pell, J., dissenting) (objections to closing arguments not made in trial court cannot be considered for the first time on appeal).
 
 
 45
 We are dealing here, of course, with matters properly left to the trial judge's sound discretion. There are many ways to deal with objectionable arguments, and certainly the trial judge is in the best position to gauge the probable effects of the improper statements and possible remedial measures on the jury. In this case, Judge Dillin, an experienced and able trial judge, instructed the jury that corporate parties are to be treated just as other parties are, that sympathy and prejudice should play no part in the verdict, and that arguments of counsel are only arguments, not evidence. In the absence of objections, I cannot say that his decision not to take further steps was an abuse of discretion or fundamental error.
 
 
 46
 Nor can I say that the verdict was the product of inflamed emotion or prejudice. The damages awarded here ($250,000 for Jennie Gonzalez' death and $216,000 for Judith Gonzalez' permanent injuries) were quite moderate in light of the injuries. In fact, Volvo has not argued on appeal that the damages were excessive or unsupported by the evidence. The difficult issues for the jury in the case against Volvo involved proximate cause and the extent of Volvo's duty to warn customers about potential dangers in using bumper hitches. The parties introduced evidence on both sides of those questions, and although members of this court might not have reached the same verdict, the verdict was not unjustified.
 
 
 47
 The majority's conclusion that the statements in closing argument prevented a fair trial seriously underestimates, in my view, the fairness and common sense of the jury. First, we are dealing here with closing arguments--not with evidence or instructions from the judge. The jury knew it was only hearing an argument, and it knew it would be hearing from the other side and from the judge before retiring for deliberations. We do the jurors a great disservice by assuming that they would not have been skeptical about counsel's arguments. United States v. Socony-Vacuum Oil Co., supra, 310 U.S. at 239, 60 S.Ct. at 851.
 
 
 48
 Second, the objectionable statements were only small portions of the argument, and it is not at all clear to me that they resulted in a miscarriage of justice. The references to the defendants' status as large corporations surely did not come as a surprise to the jury. It was never a secret that the case pitted consumers against two well-known companies. Certainly it was not proper for counsel to dwell on this fact, but I find it difficult to believe that mentioning this fact several times irretrievably tainted the verdict. Counsel's comments about the credibility of witnesses also do not rise to the very high level of impropriety needed to reverse a judgment. It is entirely proper to argue credibility to the jury and to highlight the evidence which may cast doubt on the credibility of witnesses, such as, in this case, the alleged financial dependence of all of defendants' witnesses on the defendants themselves. Plaintiffs' counsel may have crossed the wavering line between argument and expression of their own opinions, but defense counsel made the same mistakes. In addition, the exaggerated or imprecise reference to U-Haul as the largest company in the world was made during otherwise appropriate comment on the credibility of a defense witness whose business was selling hitches to, among others, trailer rental companies. When the majority says that counsel made statements "improperly suggesting criminality on the part of defendants' corporate officers," it blows out of all proportion an overdrawn analogy. The statement in question was an ill-advised analogy between Judith's situation in the hospital ("trapped within a prison within her own body for three months") and being in prison for three months. I find it difficult to believe that the jury would have seriously interpreted this analogy as a "suggestion of criminality." Finally, counsel's suggestion that the jury "set safety standards that you want applicable for our country" may have been improper, but it does not justify a reversal. In fact, there is a great deal of truth in counsel's statement, for we do rely on products liability litigation as a significant, though sometimes crude and unpredictable means for regulating the safety of products on the market.
 
 
 49
 Without condoning any of these statements by plaintiffs' counsel, in my view they simply do not rise, whether taken individually or together, to the extreme level of impropriety needed to overthrow a verdict in the absence of any objection until after the verdict is in. Reversing the judgment on this basis can only encourage other counsel to refrain from objecting below, to speculate on their success with the jury, and then to try to persuade this court to set aside the adverse verdicts on grounds never raised below.
 
 
 50
 I would affirm, and I, therefore, respectfully dissent.
 
 
 
 *
 Honorable Philip C. Wilkins, Senior District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 In fact, Volvo itself made this argument below in support of its motions for partial summary judgment and claimed that Indiana law (including, presumably, Indiana choice of law rules) should therefore apply. Record at 695-96
 
 
 [2]
 The majority appears to assume that state law governs both of these procedural matters. Slip op. at 5. That issue was hotly disputed before the district court and before this court, and it is not easily resolved. Compare the opinions of Chief Justice Warren and Justice Harlan in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), with Walker v. Armco Steel Corp., 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). In light of the majority's disposition of the case, I think that it is improper to imply, as the majority does, a holding on the question. However, the majority's wording is too ambiguous to establish the law of the case on the question