Frederick J. GRACE

v.

**MAUSER–WERKE GMBH and Mauser Packaging Ltd.**

Civ. A. No. 87–0518.

United States District Court, E.D. Pennsylvania.

Nov. 28, 1988.

Ellen Brown Furman, Goldfein & Joseph, Philadelphia, Pa., for plaintiff.

Jay J. Lambert, Duane, Morris & Heckscher, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

### INTRODUCTION

Plaintiff, Frederick J. Grace, brought this action against Mauser–Werke Gmbh and Mauser Packaging Ltd. for personal injuries sustained during the course of his employment. A jury trial, commencing January 19, 1988, resulted in a verdict in favor of the defendants on plaintiff's case of strict products liability under the substantive law of New Jersey. Presently before the court is the plaintiff's motion for judgment notwithstanding the verdict or new trial. For the reasons which follow, the motion will be denied.

### FACTS

Plaintiff Grace was an employee of Russell Stanley Plastics in Camden, New Jersey, a manufacturer of plastic drums and barrels utilizing, under license, the technology of Mauser–Werke. At the time of his accident, Grace was at work assisting in the refitting of a blow molding press. The press, designed and manufactured by Mauser–Werke, was capable of molding different sized barrels through use of a changeable core. Plaintiff was injured when the core he was helping remove dropped out of the machine and slashed his arm.

At trial plaintiff described the method historically used to change the mold core and the different method used when he was injured. In the past, after the core and its assembly were detached from the press, a forklift with a pallet would be placed under the core. A hydraulic jack would then be used to exert downward force on the core which would invariably be adhered to the machine by left over plastic. Plaintiff testified he had done about 12 core changes using this method (N.T. 1.41). When plaintiff was injured, however, instead of the forklift and jack, plaintiff was told by his supervisor William Rivera to stand under the core and guide it with his hands while Rivera and another worker used a come-along device to force the core out.

Just prior to plaintiff's accident, representatives of Mauser had been to the plant and modified the core assembly (N.T. 1.13). Plaintiff testified that he and Rivera had observed the Mauser people removing the core by hand and they departed from their standard procedure to emulate the Mauser procedure. Plaintiff assumed that the new equipment required the new procedure (N.T. 1.17). However, he was never told by the Mauser people to use the come-along (N.T. 1.47), nor had he observed them so using a come-along (N.T. 1.50). Plaintiff testified if there were warnings against the use of the come-along, he would have followed them (N.T. 1.26).

Dr. Jesse Cunitz was qualified by the plaintiff as an expert in human factors psychology, a subspecialty of the field of psychology concerned with how people interact with objects, including machinery (N.T. 2.3). Dr. Cunitz testified that a warning on the Mauser press would have, if present, served two functions: first to inform the workers of the hazard posed by the core and second to instruct the workers how to avoid the risk associated with the core change (N.T. 2.24). The witness was of the opinion it was the manufacturer's responsibility to place the warning on the machine as it had the knowledge, capability and resources to develop the procedures to identify the danger present and to transmit that information (N.T. 2.26). Dr. Cunitz opined that plaintiff's injuries were caused by the failure to place a warning of the hazard and the steps necessary to avoid the harm (N.T. 2.28).

The deposition of William Rivera was read into the record. He testified that when plaintiff had his accident, the Mauser press was hot and the workers were wearing protective gloves (N.T. 2.13). The use of the come-along instead of the forklift was his idea (N.T. 2.14). While he saw "the Germans" change the core without a forklift, he did not see them use a come-along (N.T. 2.13).

Also qualified as an expert by the plaintiff was Alfred Ellis Baccini, a safety design engineer. Mr. Baccini was of the opinion that the difficulty in removing the core from the machine was caused by a space called a pinhole extension which allowed molten plastic to overflow (N.T. 2.45). Baccini testified that Mauser must have been aware that the core would thereby stick, as the pinhole extension was designed into the machine to enhance its operation (N.T. 2.46). Baccini opined that both the forklift method and the come-along methods of forcing down the core were improper improvisations used to overcome a design defect in the machine (N.T. 2.50). He stated plaintiff's accident was a foreseeable result of Mauser's failure to design a method to properly remove the core.

Defendants' case in chief began with Charles Morelli, plant manager at Russell Stanley. He testified that after the modifications to the machine he was never told by the Mauser people not to use the forklift method (N.T. 3.12). Neither was he told the core had to be disassembled by hand. He testified the forklift was available for the workers to use on the day of the accident (N.T. 3.16–17). On cross-examination, it was elicited that Mauser never conducted any training sessions to instruct the Russell Stanley employees on the proper method of servicing the core (N.T. 3.22). The manuals published by Mauser set out the steps for removing the core, but not what tools, if any, to use for the job (N.T. 3.24).

Next to testify was Dietmar Przytulla, a consulting engineer with Mauser. He testified that the forklift method of taking down the core holder was the method used by Mauser in Germany in the early 1970's (N.T. 3.42). At that time the witness had come to the Russell Stanley plant to instruct William Rivera in the procedure for removing the core. He never told Rivera to substitute a come-along; he had never seen anyone use a come-along, here or in Germany (N.T. 3.42).

On cross-examination, Przytulla confirmed that the machine was specifically designed to allow plastic to back up into its flow channel, (N.T. 3.65), that the design of the core made it difficult to remove, (N.T. 3.66), and that someone's hands had to be near the core during the procedure to remove threading bolts (N.T. 3.66).

Also testifying for the defense was Dr. Thomas A. Hunter, an engineer with a background in safety design. After describing the forklift/jack method of removing the core, Dr. Hunter opined that it was an acceptable positive mechanical means of doing the job (N.T. 3.12). He also testified that there is no substantial difference in the manner in which core holders were placed in machines in 1973, the time the machine was placed in service, and 1986, the time of the accident. Significantly, Dr. Hunter also offered an opinion identical to that offered by Dr. Cunitz on the need for warnings. He opined that warnings would be appropriate for the hazards of heat and of the core falling out (N.T. 3.14). He stated, however, that heat was an obvious risk, as one can feel heat radiating, and the risk of falling pieces was also obvious, as all of us have knowledge of gravity. He was of the opinion that point of use warnings would be "absolutely useless," as information was passed from man to man in hands-on training (N.T. 3.15). He considered Rivera's decision to deviate from the forklift/jack method to be the cause of the plaintiff's injuries (N.T. 3.16).

## PLAINTIFF'S J.N.O.V. ARGUMENTS

Plaintiff makes three alternate arguments why the verdict was against the weight of the evidence and, therefore, that J.N.O.V. should be entered. First, plaintiff contends that the evidence was uncontroverted that the core apparatus posed a danger and that a warning was necessary to render the product reasonably safe for

its intended purpose. Plaintiff bases this argument on the testimony of Dr. Hunter which corroborated the testimony of Dr. Cunitz.

■ To grant a motion for judgment notwithstanding the verdict, the court must find, as a matter of law, that the prevailing party failed to adduce sufficient facts to justify the verdict. *Link v. Mercedes Benz of North America, Inc.,* 618 F.Supp. 679, 693 (E.D.Pa.1985), aff'd in part 788 F.2d 918 (3d Cir.1986). Where, as here, the moving party also had the burden of persuasion at trial, the standard for granting J.N.O.V. is even more stringent:

> [T]he judge [must] ... test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect. He must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding.

*Id.,* quoting *Gatenby v. Altoona Aviation Corp.,* 407 F.2d 443, 446 (3d Cir.1968), *Mihalchak v. American Dredging Co.,* 266 F.2d 875, 877 (3d Cir.1959).

■ While plaintiff is correct that Dr. Hunter did opine that warnings would be "appropriate" for the hazards of heat and falling parts, he also stated these were obvious risks to the plaintiff, who was a knowledgeable user of the blow molder. He further termed point of use warnings "absolutely useless." We, therefore, find it was within the jury's ambit to find that the lack of a point of use warning did not constitute a defect in the machine.

■ Second, plaintiff contends the evidence was uncontroverted that the Mauser machine was defective in that it was knowingly designed to allow plastic to stick to the core holder, which fit snugly into the machine, making its removal impossible without means other than gravity. While the defense did not offer direct contradictory evidence to Mr. Baccini's opinion that the machine was so defective, defendant's cross-examination of Baccini did place before the jury the question of what

weight to attach to his opinion. It is not for the court on a J.N.O.V. motion to repass on the credibility of a witness or substitute our judgment for that of the jury. *Blair v. Manhattan Life Ins. Co.,* 692 F.2d 296 (3d Cir.1982).

■ Third, the plaintiff argues that J.N.O.V. should be granted because there was insufficient evidence to support any finding other than that the defects in the Mauser machine constituted the proximate cause of the plaintiff's injuries. Our summary of Dr. Hunter's testimony shows that argument to be without basis. Dr. Hunter testified that he considered William Rivera's decision to deviate from the forklift/jack method to be the cause of the plaintiff's injuries. Therefore, sufficient evidence was before the jury to support their finding and discount the entry of J.N.O.V.

### PLAINTIFF'S NEW TRIAL ARGUMENTS

In addition to his arguments for J.N.O.V., plaintiff makes three alternate arguments for new trial. He argues (1) the court improperly permitted cross-examination into plaintiff's skill in using the Mauser blow press; (2) the court improperly limited impeachment of defendant's expert; and (3) the court erred in failing to include in its charge instructions offered by the plaintiff.

■ The authority to grant a new trial is entrusted to the discretion of the trial court, whose "duty is essentially to see that there is no miscarriage of justice." 6A Moore's Federal Practice § 59.08[5] at 59–140, *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980), *Thomas v. E.J. Korvette, Inc.,* 476 F.2d 471, 474–475 (3d Cir. 1973). A district court may not substitute its own judgment for that of the jury simply because the court might have come to a different conclusion. *Douglas W. Randall, Inc. v. A.F.A. Protective Systems, Inc.,* 516 F.Supp. 1122, 1124 (E.D.Pa. 1981), aff'd mem. 688 F.2d 820 (3d Cir. 1982). A new trial must be granted if there was substantial error in the admis-

sion or exclusion of evidence. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940), *Marder v. Conwed Corp.*, 75 F.R.D. 48 (E.D.Pa.1977). In other words, a district court may grant a new trial if required to prevent injustice or to correct a verdict that was against the weight of the evidence. *American Bearing Co., Inc. v. Litton Industries*, 729 F.2d 943, 948 (3d Cir.1984), *cert. denied*, 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984).

■ As to plaintiff's argument that the court erred in permitting cross-examination into plaintiff's skill in using the machine, plaintiff's counsel made two objections, first to a question inquiring into plaintiff's responsibility in maintaining the machine and, second, to a question inquiring whether plaintiff considered himself competent at doing his work at the Russell Stanley plant. In *Campos v. Firestone Tire & Rubber Co.*, 98 N.J. 198, 485 A.2d 305 (1984) the New Jersey Supreme Court made clear that, although it did not accept an obvious danger rule, a plaintiff's pre-existing knowledge might negate a claim that the lack of a warning was the cause of a plaintiff's injury. Therefore, evidence of Mr. Grace's knowledge of the workings of the press was relevant, under the substantive law of New Jersey, on his defective warning claim.

■ Likewise, this same rationale negates plaintiff's claims of error regarding cross-examination of Dr. Cunitz. Further, we note, plaintiff's counsel did not object to the specific questions to Dr. Cunitz she now claims were error. It is well settled that objections not raised at trial are waived. Fed.R.Ev. 103(a)(1); see, e.g. *Gonzalez v. Volvo of America Corp.*, 734 F.2d 1221 (7th Cir.1984). The purpose of this rule is to inform the court of possible errors so that there is a timely opportunity for them to be corrected.

Further, while plaintiff claims error on the issues of contributory negligence, assumption of the risk and the sophisticated purchaser issues, counsel admits that in our charge, the court acknowledged that these defenses were not permitted under the law of New Jersey. Counsel points to no specific objectionable questions on these issues, let alone to properly preserved objections.

■ Plaintiff's next point of error is that the court did not permit the plaintiff to cross-examine Dr. Hunter, for the purpose of impeachment, on the subject of a prior lawsuit involving his employer, American Standard Testing Bureau. The testimony would have alleged that A.S.T.B. had previously misrepresented results of expert services. Reviewing the transcript of Dr. Hunter's cross-examination, however, one will find no reference to this line of questioning. In an informal discussion, conducted off the record, plaintiff's counsel raised this issue to the court. The court questioned the relevancy of this testimony, however, made no decision on its admissibility. Counsel was invited to make an offer of proof on the record. Apparently, no such offer was in fact made on the record. As the defendants have properly asserted, plaintiff thereby waived the right to claim error. Fed.R.Ev. 103(a)(2).

■ Plaintiff's co-counsel have each filed affidavits with the court attesting that an offer of proof was made and that a request was made of the official court reporter to review the notes of testimony to locate the offer of proof. Plaintiff has not, however, moved to amend the record. The court strongly believes that, even if the proffered testimony were admitted, it would not have changed the jury's determination of the merits. Therefore, we find that the evidence if offered and excluded was at best harmless error. We thus deny plaintiff's request for new trial on this ground.

■ Plaintiff's final category of arguments relates to the court's charge to the jury. Plaintiff raises as error the court's failure to include seven requested points for charge in our instructions. However, as the defendant has again correctly asserted, the plaintiff has failed to preserve certain of his assigned points of error. While the new trial motion contains objections to the court's refusal to read

plaintiff's Proposed Points for Charge Nos. 35, 40, 58(a), 58(b) and Supplemental Points 2, 3 and 5, only 58(a), 58(b), 3 and 5 were raised by plaintiff's counsel at sidebar immediately following the reading of the charge. Fed.R.Civ.P. 51 provides clearly that:

No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

We, therefore, address only those points properly preserved.

Points 58(a) and (b) read as follows:

58a. I instruct you that a seller has a duty to take feasible steps to render his product safe and the seller may not rely on the haphazard conduct of the ultimate purchaser to remedy or protect against defects for which he is responsible.

I instruct you that you may not consider any evidence of Russell Stanley's conduct or the conduct of Russell Stanley's agent in making your determination.

58b. You are further instructed that where Mauser Werke alleges that Russell Stanley or one of Russell Stanley's agents failed to take reasonable steps to protect its employees, you will not, as a matter of law, be permitted to find that the actions of Russell Stanley or its agent were the exclusive proximate cause of the accident.

At sidebar the court responded to the request to read 58(a) by stating that the substance of the point was covered in the court's charge and declined to read it again. Specifically, the court had previously charged the jury, *inter alia,* that:

A product must be provided with every element necessary to make it safe for its intended or foreseeable use, and without any condition that makes it unsafe for its intended or foreseeable use.

. . . . .

Knowledge of the risk that employers may not adequately warn their employees is imputed to the defendants in a strict liability action.

. . . . .

Since the duty is to place on the market a product free of defects, and this duty attaches at the time the product is introduced into the stream of commerce, a particular user's subjective knowledge of danger does not and cannot modify the manufacturer's duty.

We find that our instructions conveyed the substance of plaintiff's Point 58(a).

■ As to 58(b), the instruction sought to apply to the facts of this specific case the rule of law that a manufacturer cannot implead an employer's failure to take steps to overcome a design defect as a superseding cause to that defect. That is, where the manufacturer offers evidence that an employer failed to adequately protect the employee-plaintiff, the jury must, in every situation, find that this failure could not be the proximate cause of the accident. While the court did not use the plaintiff's exact words in our charge to the jury, we clearly related the point of law to the jury when the court charged:

I instruct you that if you find that there was a design defect or a defect by failure to warn, then you must not consider the defense of superseding cause.

. . . . .

Knowledge of the risk that employers may not adequately warn their employees is imputed to the defendants in a strict liability action.

We, therefore, find that Point 58(b) was adequately covered and the failure to read it verbatim to the jury did not constitute error.

■ Plaintiff's Supplemental Point 3 asked the court to charge:

3. An employee engaged in his assigned task on a plant machine cannot be held responsible for any injuries he may sustain from that machine.

Read in conjunction with Supplemental Point 2, the requested instruction sought to negate an assumption of the risk defense. We find plaintiff's argument that the

court's instructions on assumption of the risk were insufficient, to be without merit.

As plaintiff points out when the question of assumption of the risk was raised at sidebar, the court issued two supplementary instructions to the jury at plaintiff's request:

> There is no contributory negligence or assumption of the risk in the case (N.T. 4.19:20–21).[1]

and, shortly thereafter:

> I just told you that you are not to find that the plaintiff assumed any of the risks in this matter. Also, I instruct you, you are not permitted to consider whether the plaintiff was careless or inattentive because an employee such as Mr. Grace doesn't assume the risk nor is he contributorily negligent. (N.T. 4.20:23–4.21:3).

Plaintiff further concedes that the court acknowledged that the defense was unavailable under the law of New Jersey. We find that Supplemental Point 3 was adequately covered by the court's charge and that there was no confusion on the part of the jury that they could consider the defense.

 Finally, in Supplemental Point 5, the plaintiff requested the court charge the jury that:

> 5. In this case, defendant did not call any of the Mauser fitters or Klaus Butz. The general rule as it applies in the case of failure to call a witness is as follows— where a potential witness is available and is shown to have special information relevant to the case so that his testimony would not merely be cumulative and where his relationships to one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony and there is no satisfactory explanation for his failure to do so, you may draw the inference that such testimony would have been unfavorable.

The court denied the requested point at sidebar holding that plaintiff could have called the witness if he so chose. Plaintiff's argument that the defendants were subject to this "negative inference" charge is groundless. The law does not require any party to call as a witness all persons who may have been present at any time or place involved in a case or who may appear to have some knowledge of the matters in issue at a trial. Devitt, Blackmar, *Federal Jury Practice*, § 73.11 (4th Ed.1987). We find, therefore, that our refusal to read the negative inference point was not error.

## CONCLUSION

The motion of the plaintiff for J.N.O.V. or, in the alternative, for a new trial will be denied for the reasons we have stated.

---

1. The transcript of the notes of testimony inaccurately identifies this statement as that of plaintiff's counsel. Plaintiff, however, has recognized in his brief that this was spoken by the court to the jury.