**Kenneth HOLLOWAY, Loretta Holloway, his wife, Appellants,**

**v.**

**J. B. SYSTEMS, LIMITED, The Electric and Gas Welding Company Limited, Nordic Steel Products Limited, Walker Vacuum Service Limited, General Motors of Canada, Limited, General Motors of Canada, Limitee.**

No. 79–1219.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Oct. 11, 1979.

Decided Nov. 26, 1979.

**6.** Sentence was originally imposed on September 20, 1978. The first installment was due within 60 days thereafter.

Fred J. Silverman, Marjorie C. Lawrence, Silverman & Warden, Willow Grove, Pa., and Alan R. Kutner, Korn, Kline & Kutner, Philadelphia, Pa., for appellants.

Frank C. Bender, Deasey, Scanlan & Bender, Ltd., and Clayton H. Thomas, Jr., Charles W. Craven, Marshall, Dennehey & Warner, Philadelphia, Pa., for appellees.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

In this products liability action, we are asked to decide whether the district judge, in the course of charging the jury, correctly defined the elements of strict liability and causation. Both parties agree that the resolution of the issues in this diversity case is governed by Pennsylvania law. After reviewing the contentions raised by the plaintiffs on appeal, we affirm the judgment of the district court.

### I.

Kenneth and Loretta Holloway brought the present action to recover damages for injuries that Mr. Holloway sustained at his place of employment by the explosion of a vacuum tank. The tank was originally manufactured in 1969 by Electric and Gas Welding Co., Ltd. (EGW), a Canadian corporation. EGW produced the tank for LaSalle Oil Carriers, Ltd., also a Canadian company, in accordance with LaSalle's specifications. The tank was designed to fit on a chassis manufactured by LaSalle and was to be a vacuum intake, gravity expulsion vessel. That is, the contents were to be taken into the tank by vacuum suction and released by gravity through a hinged door. The Special Projects Manager of EGW testified that the tank was neither designed nor intended to operate as a pressure expulsion vessel.[1] Under a pressure expulsion system, the contents of a vessel would be

---

1. App. § 6(a), at 9–158.

discharged as they were displaced by air pumped into the tank. Because the tank was designed to function under a vacuum intake arrangement, however, EGW built the vessel so that it might accommodate an air pump and a valve to permit the escape of pressure that might build up in the tank.

LaSalle later equipped the tank with an air pump and a gas release valve and then sold the tanker truck to J. B. Systems, Ltd. In turn, J. B. Systems sold the tanker truck to Bux Mont Oil Service, Kenneth Holloway's employer. By the time of this last sale, the tank was mounted on a different chassis than the one to which it was attached by EGW. Moreover, the tank itself had been modified to function as a pressure discharge system. The air pump and gas release valve, which were installed by La-Salle, had been replaced with equipment to allow the vessel to be drained by air pressure rather than gravity. There was no evidence that EGW made or even knew of these changes.

Harry Roberts, the manager of Bux Mont, was operating the tanker truck on March 26, 1975. As he pressurized the tank in order to discharge its contents, four bolts broke loose from the rear door of the tank; Holloway, who was standing nearby, was struck in the head. Roberts testified that he had not checked the tightness of the bolts before he began pressuring the tank.[2] Several of the experts called at trial testified that, had the bolts been properly tightened, the accident would not have occurred.[3] There was also testimony that the bolts may have broken loose because the

metal had been weakened by prior use of the tank.[4]

The Holloways predicated their claim on § 402A of the Restatement (Second) of Torts. That section, which was adopted by the Pennsylvania Supreme Court in *Webb v. Zern,* 422 Pa. 424, 427, 220 A.2d 853, 854 (1966), provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.[5]

The Holloways conceded that the addition of the pressure discharge system constituted a "substantial change" in the condition of the tank from the time it left EGW's factory. They nevertheless sought to hold EGW liable on the theory that the tank, as it left EGW's care, was defective because there was no warning that it should not be subjected to internal pressurization.[6]

---

**2.** Deposition of Harry Roberts 179.

**3.** Record at 6–41 to 6–42, 10–97 to 10–99, 10–33.

**4.** *Id.* at 6–42 to 6–43.

**5.** Restatement (Second) of Torts § 402A (1965). The Pennsylvania Supreme Court has removed from consideration by the jury the question whether a defect causes the product to be "unreasonably dangerous." *Azzarello v. Black Bros. Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978). The court stated in *Azzarello* that the question is relevant to a judicial policy decision whether to assign liability to a particular seller, but could lead jurors to believe that the negligence concept of the "reasonable person" was

a factor in assessing whether a product is defective. *Id.* at 554–60, 391 A.2d at 1025–27.

**6.** The reporters of the Restatement recognized that a seller's failure to warn may itself be a defect in the product's condition:

In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.

\* \* \* \* \* \*

Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

In absolving EGW from liability, the jury implicitly rejected this claim. The Holloways do not challenge the sufficiency of the evidence to support the jury's verdict.[7] Instead, the Holloways raise two principal contentions on this appeal. First, they argue that the trial judge improperly introduced negligence concepts into the case by admitting testimony and instructing the jury to the effect that EGW could be held not liable (a) if it had adhered to the "trade and custom" of the industry when it built the tank in 1969, or (b) if it exercised due care in producing the tank. Second, the Holloways claim that the trial judge incorrectly charged the jury on the question of superseding causation.

## II.

In urging that the district judge erroneously introduced negligence concepts into the case, the Holloways first challenge the admission of testimony to the effect that EGW, in not providing a warning with the tank, had merely conformed to the standards of the industry in 1969.[8] They insist that this testimony, and an instruction that the manufacturer must "look to industry" standards,"[9] might have misled the jurors into believing that they could decide in favor of EGW if they found that it had adhered to industry standards. The Holloways also question a portion of the jury instruction which suggested that the jurors could "consider the avoidability of injury by [EGW's] exercise of care or by the use of appropriate instructions or by the use of warnings."[10] The Holloways objected to the testimony regarding "industry standards," but did not except to either jury charge.

Admission of the "industry standards" testimony was justified by the district court on the basis of *Verge v. Ford Motor Co.,* 581 F.2d 384 (3d Cir. 1978). In *Verge,* a garbage collector was injured when a garbage truck backed into him. He sued Ford Motor Co., the manufacturer of the truck's chassis, alleging that Ford was strictly liable for not installing a back-up warning bell. Ford designed the chassis to accommodate several different kinds of truck bodies. The garbage truck equipment was installed by two companies, other than Ford, with whom the plaintiff had settled prior to trial. The Court stated that, where "the finished product is the result of substantial work by more than one party, we must determine responsibility for the absence of a safety device by looking primarily to at least three factors," one of which was trade custom—that is, "at what stage is that device generally installed." *Id.* at 386–87. The burden of installing the warning device, the Court concluded, should fall on the company that equipped the chassis with a particular body and thereby determined what type of truck it would be. *Id.* at 389.

Restatement (Second) of Torts § 402A, Comment j (1965).

**7.** As we have previously noted, whether a product is defective is, under Pennsylvania law, a question of fact. *Heckman v. Federal Press Co.,* 587 F.2d 612, 617 (3d Cir. 1978). In the absence of an explicit challenge on appeal, we will not decide whether the evidence was sufficient to warrant submission of the case to the jury.

**8.** The district judge admitted the following testimony by EGW's Special Projects Manager:
Q. So that, Mr. Brunelle, when you testified as to EGW did not put a warning on them, then you said you checked with other users, are you referring to other users who bought trucks from other companies?
A. Yes.
Q. And these were vacuum tanks?

A. They were vacuum tanks.
Q. And this was the same service?
A. They were vacuum service, the same service that LaSalle was doing and they were competitors of LaSalle.
Q. And they had no warnings on theirs?
A. No.
Record at 9–174 to 175.

**9.** The district judge charged the jury:
In considering whether a machine was defectively designed or produced, the manufacturer is held to the standard of an expert with regard to its product and the use of that product. The manufacturer must look to the standards of the industry.
*Id.* at 12–21.

**10.** *Id.* at 12–22.

■ *Verge* does not support the district court's decision in this case to admit the trade custom testimony. In *Verge,* the Court used the concept of trade custom only to determine the stage in the production of equipment manufactured by several companies at which a warning device generally was installed. Once the customary stage was identified, the producer responsible for that stage would be held strictly liable. In contrast, the trade custom testimony introduced at trial here was intended to demonstrate that it was the custom of the industry not to attach a nonpressurization warning at all. Moreover, in *Verge,* the allegedly defective garbage truck was produced by three separate companies. In contrast, the tank—alleged to be defective because it did not contain a warning—was produced exclusively by EGW. In *Heckman v. Federal Press Co.,* 587 F.2d 612 (3d Cir. 1978), also a diversity case involving Pennsylvania law, we held that *Verge* did not apply because the product claimed to be defective was produced solely by one manufacturer.[11]  *Id.* at 617.

It was inappropriate to admit testimony regarding trade custom, because the jury might have inferred that if virtually no other tank manufacturer in 1969 included a warning about pressurization it could hold EGW not liable. This use of trade custom as evidence of the reasonableness of EGW's inaction would be permissible if the case were tried under negligence principles, but is inconsistent with the doctrine of strict liability. We are not persuaded, however, that the district court committed reversible error. The other testimony was properly

limited to issues of strict liability. Moreover, the instructions emphasized that the jury could find EGW liable without negligence or fault on its part under the principles of § 402A. We believe that, in the context of the entire case, the Holloways were not prejudiced by the admission of the trade custom testimony. *See* Fed.R.Civ.P. 61. As to the Holloways' challenge to the jury instructions, their failure to object at trial precludes them from raising the issue here. Fed.R.Civ.P. 51.

■ Although we do not hold that reversible error was committed by the district court, we emphasize that negligence concepts such as "trade custom" or "reasonable care" have no place in suits brought under § 402A as that section has been interpreted by the Pennsylvania courts. The Pennsylvania Supreme Court, in *Azzarello v. Black Brothers Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978), condemned the use of instructions that might lead a jury, in a § 402A action, to believe that the reasonableness of the defendant's conduct was an issue in the case. We read *Azzarello* as a signal that evidence and jury instructions regarding negligence concepts should be kept out of cases brought under § 402A.[12]

### III.

The Holloways also challenge two portions of the jury instructions dealing with superseding cause. In *Eshbach v. W. T. Grant's & Co.,* 481 F.2d 940 (3d Cir. 1973), we held that, in a Pennsylvania products liability suit brought under § 402A, actions by a third party can relieve the manufac-

---

11. Even if *Verge* involved facts identical with those present here, it would not be controlling because in *Verge* the Court was interpreting § 402A as a matter of Virgin Islands law.

12. In *Heckman v. Federal Press Co.,* 587 F.2d 612, 617 (3d Cir. 1978), a panel of this Court noted that a jury's decision to assign liability to a particular defendant should be based, among other factors, on the "feasibility of incorporating safety features during manufacture of the machine." It is not clear, in light of *Azzarello,* whether the Pennsylvania Supreme Court would continue to permit a jury to decide questions regarding the feasibility of preventing a defect at the time of manufacture. The feasi-

bility is different, however, from the question presented here—namely, whether testimony that it was the custom of the industry not to warn of potential dangerous uses is relevant to a jury's liability determination. Consequently, we have no need to decide whether, in light of *Azzarello,* the *Heckman* language regarding feasibility continues accurately to reflect Pennsylvania law. Moreover, inasmuch as the decisions of this Court interpreting and predicting state law have only limited precedential effect, final resolution of the feasibility question must be left to the Pennsylvania lawmaking authorities.

turer of liability if the conduct is "so extraordinary as not to have been reasonably foreseeable." *Id.* at 945 (quoting *Wilson v. American Chain and Cable Co.,* 364 F.2d 558, 562 (3d Cir. 1966)). Here, the district court instructed the jurors that they could hold EGW not liable if they found that the tank operator's failure to check the tightness of the bolts was "highly extraordinary negligence" which could not have been anticipated by EGW.[13]

 In assessing whether subsequent conduct was "so extraordinary as not to have been reasonably foreseeable," a jury should view the sequence of events retrospectively, " 'looking back from the harm to the negligent act rather than by considering whether the defendant should prospectively have envisaged the events which unfolded and caused the accident.' " *Eshbach v. W. T. Grant & Co.,* 481 F.2d at 945 (quoting *Wilson v. American Chain and Cable Co.,* 364 F.2d at 562). The district judge here properly followed this standard; the challenged portion of the instructions is replete with admonitions that the jurors view the matter retrospectively.[14] Even if the charge was arguably incorrect, however, the Holloways are precluded from pressing the issue on appeal because they failed to object to the charge at trial. Fed.R.Civ.P. 51.

The Holloways also protest the trial judge's statement that EGW was not responsible for "wear and tear" on the bolts and, therefore, if the bolts were "inherently weak," the jury could find in favor of EGW.[15] In our view, this instruction was properly given to inform the jury that the weakness of the bolts may have been a superseding cause of Mr. Holloway's injury. In *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974), a products liability case, the Pennsylvania Supreme Court recognized that prolonged use of a product is an important factor "in the determination of the factual issue whether [a defect in design or] manufacture proximately caused the harm." *Id.* at 336, 319 A.2d at 923 (quoting *Pryor v. Lee C. Moore Corp.,* 262 F.2d 673, 675 (10th Cir. 1958)) (brackets in original). In view of the expert testimony that the bolts would not have broken loose had they not been weakened by prior use, we conclude that the district court did not err in giving the "wear and tear" instruction. The jury reasonably could have concluded that Bux Mont's failure to replace the bolts or check them for metal fatigue after using the tank for a number of years constituted a superseding cause of Mr. Holloway's injuries. In any event, although the Holloways discussed this portion of the charge with the trial judge,[16] they did not object to it or request a clarifying instruction. Accordingly, they may not contest the propriety of the charge on appeal. Fed.R.Civ.P. 51.

The judgment of the district court will be affirmed; each side to bear its own costs.

---

**13.** App. § 9(a), at 12–40 to 12–43.

**14.** The court's charge included the following passages:

> As you look at the situation thinking back on *what occurred,* thinking about what was done or what was not done, *in other words, viewing the matter with the wisdom of hindsight, was it highly extraordinary that* Roberts would fail to tighten all of those bolts or enough of the bolts?
>
> \* \* \* \* \* \*
>
> EGW is relieved of responsibility, assuming otherwise it's liable, of course, only if what Roberts did or what Roberts failed to do *was*

*in your opinion as reasonable persons* a highly extraordinary thing.

> \* \* \* \* \* \*
>
> *Viewing the matter with the wisdom of hindsight,* was it highly extraordinary that J. B. System would be negligent if in fact it was negligent in failing to inspect the unit or failing to test the pressure relief valve to make sure the unit could be safely discharged under pressure if this is what occurred? *Id.* (emphasis added).

**15.** *Id.* § 9(a), at 12–31.

**16.** *Id.* § 9(a), at 12–62 to 12–63.