Ortrud S. LAPENNA, Individually, as Surviving Widow, and as Administratrix CTA of the Estate of Carmen A. Lapenna, Deceased and Rodney Jason Lapenna, a minor, by his parent and natural guardian, Ortrud S. Lapenna Plaintiffs

v.

The UPJOHN COMPANY, a corporation.

No. Civ. A. 82–4050.

United States District Court, E.D. Pennsylvania.

June 30, 1987.

See also, 110 F.R.D. 15.

Walter C. Ward, Miami, Fla., Joseph P. Moschetta, Washington, Pa., for plaintiffs.

Thomas M. Kittredge, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

Plaintiff's husband, Carmen A. Lapenna, had a long, progressive, debilitating, degenerative disease involving his central nervous system. Toward the end, he was barely able to walk and was in constant pain. In an effort to provide relief, his neurologist made an intrathecal injection of Depo-Medrol, a product made by the defendant. Approximately six weeks later, Mr. Lapenna died, his condition having markedly worsened after he received the Depo-Medrol. Following a lengthy trial, the jury concluded that Depo-Medrol had not caused Mr. Lapenna's paraplegia, pain, suffering, mental distress, or death. Plaintiffs' post-trial motions are now before me for consideration.

Only one issue raised by the plaintiffs warrants attention: a purported violation of Fed.Rule of Evid. No. 615, the rule dealing with the sequestration of witnesses. At the start of trial, Rule 615 was invoked. A limited discussion about who could be designated under Rule 615(3) to assist in the presentation of the defense followed. Counsel for plaintiffs also commented he did not want defendant's representative telling other persons about the testimony. I read the rule again to counsel and stated "I understand that Rule 615 means that at the request of the party, the Court shall order witnesses excluded so they can not hear the testimony of other witnesses. That's what we will do." Nothing else was said. No expansion of the rule was requested, nor was any request made to limit counsels' communicating with witnesses.

During cross-examination, an expert witness appearing for the defense, Dr. Stephen D. Silberstein, was asked if he had been told about the testimony of other witnesses. He responded that counsel had shown him a copy of the transcript from one of plaintiffs' experts and part of the testimony of Mr. Lapenna's treating physician, the neurologist who had actually injected the Depo-Medrol. It is argued that my refusal to grant the motion of plaintiffs' counsel to preclude the testimony of Dr. Silberstein warrants a new trial.

I ruled as I did for several reasons:

█ In the first place, at the time Rule 615 was invoked, I was not asked to give any instruction to any one that would go beyond the literal meaning of the rule. I read it to counsel and said we would exclude witnesses so they could not hear what other witnesses said. Had I been asked to broaden the rule, for example, to tell counsel that they were to be sure that witnesses did not talk with each other, that they were not to discuss with a potential witness what another had said, or that they were not to show a transcript to a witness whom they planned to call, I would have considered such instructions. *See Government of Virgin Islands v. Edinborough*, 625 F.2d 472, 475–6 (3d. Cir.1980). No request was made however, and the literal words of the rule do not preclude a lawyer's talking to his expert witnesses and discussing what witnesses for the other side have said.

Second, the exclusion of testimony is a drastic sanction. *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201–02 (3d Cir.1978).

Third, there was no showing of any prejudice to the plaintiffs. They had Dr. Silbertstein's expert report prior to trial. It was not suggested at trial, nor since trial, that his testimony was changed in any way from that which had been anticipated from him. Because Dr. Silberstein's seeing the

transcripts did not affect his testimony, there was no prejudice. *Trans World Metals v. Southwire,* 769 F.2d 902, 911 (2d Cir.1985).

Finally, and most important of all, it makes no sense to say that a lawyer cannot consult with his expert witnesses after the trial has started. Obviously, if he can consult with them, he can discuss the testimony they may be expected to give. If he can do that, he should be able to discuss the testimony of the witnesses for the other side. If that is permissible, there is no reason why he cannot show his expert witnesses the verbatim statements of those who have appeared for the other side. After all, a lawyer can discuss with his own experts all of the information that has been obtained through discovery: an opposing expert's report, answers to interrogatories, and deposition. If the testimony of an opposing expert varies from that which has been obtained through discovery, a lawyer should certainly be allowed to discuss the variances with his own expert. To suggest otherwise is absurd. If there has been no change between what the opposing expert was expected to say and what he actually did say, the expert's seeing the transcript will not affect the testimony he himself will give.

Even if there has been no discovery about what an expert will say, a lawyer should be allowed to discuss the opposing expert's testimony with his own expert. If he cannot do so, the testimony of the experts will be like two ships that pass in the night, neither responding to the other.

In *Mayo v. Tri-Bell Industries,* 787 F.2d 1007 (5th Cir.1986), the court approved the district court's conclusion that the proper interpretation of Rule 615 and 703 permit experts to be exempted from an exclusion order. The purpose of an exclusion order is to prevent the possibility of one witness shaping his testimony to match that given by other witnesses. Rule 615 is a codification of the long established practice of sequestering witnesses to discourage or expose fabrication, inaccuracy, and collusion. *Government of Virgin Islands v. Edinborough,* 625 F.2d 472, 473 (3d Cir.1980). Its

purpose was not to preclude communication between attorneys and experts.

The question of whether to permit Dr. Silberstein to testify or to exclude his testimony was a matter within my discretion. That discretion was not abused.

 Plaintiffs also contend that I introduced negligence concepts into a strict liability case. However, even in a strict liability case, causation must be shown, *Sherk v. Daisy-Heddon,* 498 Pa. 594, 450 A.2d 615 (1982), and the issue of foreseeability is inescapable when the defense of superseding cause has been raised. *Von Buskirk v. Carey Canadian Mines Ltd.,* 760 F.2d 481, 495 (3d Cir.1985). Plaintiffs other assignments of error do not warrant discussion.

## ORDER

AND NOW, this 30th day of June, 1987, plaintiffs' alternative motions for judgment notwithstanding verdict or for a new trial are hereby refused.